United States District Court
Southern District of Texas

**ENTERED**

August 25, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHEL THOMPSON, BRANDON CASTON, D'ERRICKA GREEN, and TYREE RHODES, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-0484 |
| GLOBAL FIXTURE SERVICES, INC. and DUSTIN HUGHES, Individually, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michel Thompson, Brandon Caston, D'Erricka Green, and Tyree Rhodes (collectively, "Plaintiffs") assert that defendants Global Fixture Services, Inc. ("Global") and Dustin Hughes (collectively, "Defendants") violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiffs for overtime hours they worked.[1] Pending before the court is Defendant Global Fixture Services, Inc.'s and Dustin Hughes' First Amended Motion to Compel Arbitration and Stay or Administratively Close Case Pending Arbitration ("Amended Motion to Compel") (Docket Entry No. 36). For the reasons explained below, Defendants' Amended Motion to Compel will be granted in part and denied in part.

---

[1]Plaintiffs' First Amended Complaint ("Amended Complaint"), Docket Entry No. 30, p. 6 ¶ 25. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

## I.  Factual and Procedural Background

Each Plaintiff signed contractor agreements with Global.[2]
Each of the agreements provided that "[a]ll claims and disputes
between Contractor and Global Fixture Services, Inc. arising under
the terms of this Agreement or in any way related to this Agreement
shall be exclusively resolved through arbitration governed by the
Federal Arbitration Act."[3]  The agreements further provided that
"Global Fixture Services, Inc. and Contractor each waive any rights
they may have to pursue or participate in a class or collective
action pertaining to any arbitral claims between each other."[4]
Dustin Hughes is the president of Global.[5]  He did not sign the
contractor agreements.[6]

Defendants filed their Amended Motion to Compel (Docket Entry
No. 36) on July 8, 2022.  Plaintiffs filed their Response (Docket

---

[2]Amended Motion to Compel, Docket Entry No. 36, pp. 2-3
¶¶ 5-8; Plaintiffs' Response to Defendants' First Amended Motion to
Compel Arbitration ("Plaintiffs' Response"), Docket Entry No. 42,
p. 1 ¶ 1.

[3]Michel Thompson's Contractor Agreement, Exhibit A to Amended
Motion to Compel, Docket Entry No. 36, p. 13 ¶ 23; Brandon Caston's
Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket
Entry No. 36, p. 21 ¶ 23; D'Erricka Green's Contractor Agreement,
Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 29
¶ 23; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended
Motion to Compel, Docket Entry No. 36, p. 37 ¶ 23.

[4]Id.

[5]Amended Complaint, Docket Entry No. 30, p. 4 ¶ 13; Amended
Motion to Compel, Docket Entry No. 36, p. 2 ¶ 4.

[6]Amended Motion to Compel, Docket Entry No. 36, p. 2 ¶ 4.

Entry No. 42) on July 29, 2022.  Defendants filed Defendants Global Fixture Services, Inc.'s and Dustin Hughes' Reply to Plaintiffs' Response to Defendants' First Amended Motion to Compel Arbitration ("Defendants' Reply") (Docket Entry No. 45) on August 11, 2022.

## II.  **Legal Standard**

In  enacting  the  Federal  Arbitration  Act  ("FAA"),  9  U.S.C. §§  1,  et seq.,  Congress  "expressed  a  strong  policy  favoring arbitration  before  litigation,  and  the  courts  are  bound  to  take notice  of  this  broad  policy  as  well  as  specific  statutory provisions  in  dealing  with  arbitration  clauses  in  contracts." J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212, 214-215 (5th Cir. 1973).  The FAA provides that "[a] written  provision  in  .  .  .  a  contract  evidencing  a  transaction involving  commerce  to  settle  by  arbitration  a  controversy thereafter arising out of such contract or transaction . . . shall be  valid,  irrevocable,  and  enforceable,  save  upon  such  grounds  as exist  at  law  or  in  equity  for  the  revocation  of  any  contract." 9 U.S.C. § 2.  Section 3 of the FAA requires federal courts, on a party's  motion,  to  stay  litigation  of  claims  subject  to arbitration.  9 U.S.C. § 3.  Section 4 of the FAA permits a party to  seek  an  order  compelling  arbitration  if  the  other  party  has failed  to  arbitrate  under  a  written  agreement.   9 U.S.C. § 4. "[T]he party resisting arbitration bears the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act."

-3-

Gallagher v. Vokey, 860 F. App'x 354, 357 (5th Cir. 2021) (internal quotations omitted).

Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 688 (5th Cir. 2018) (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)). The parties agree that Texas contract law applies.[7] "Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." Id. (citing J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003)). "Instead, the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements." Id.

State-law contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. Doctor's Associates, Inc. v. Casarotto, 116 S. Ct. 1652, 1656 (1996). Challenges to the validity (rather than the

---

[7] See Amended Motion to Compel, Docket Entry No. 36, p. 4 ¶ 14; Plaintiffs' Response, Docket Entry No. 42, p. 5 ¶ 15.

existence) of the parties' contract as a whole are for the arbitrator to decide, while challenges to the validity of the agreement to arbitrate are for the court. <u>See Buckeye Check Cashing, Inc. v. Cardegna,</u> 126 S. Ct. 1204, 1210 (2006).

In step two of the analysis the court asks whether "the dispute in question fall[s] within the scope of that arbitration agreement." <u>Klein,</u> 710 F.3d at 236. "When deciding whether the parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." <u>Polyflow, L.L.C. v. Specialty RTP, L.L.C.,</u> 993 F.3d 295, 302-03 (5th Cir. 2021) (internal quotations omitted). "In doing so, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" <u>Id.</u> at 303 (quoting <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,</u> 109 S. Ct. 1248, 1254 (1989)).

### III. <u>Analysis</u>

Plaintiffs do not dispute that they signed arbitration agreements with Global. Plaintiffs argue that because "the arbitration clauses require Plaintiffs to bear half of the prohibitive costs of arbitration" and because "Plaintiffs do not have the financial wherewithal to exercise their rights in this fashion[,]" the arbitration clauses are unconscionable under Texas

and federal law.[8]   Plaintiffs also argue that "the arbitration agreements are limited in time and do not fully cover all time periods for which Plaintiffs have claims."[9]

## A.   Validity of the Arbitration Provisions

Plaintiffs do not dispute the validity of the contractor agreements.  Instead, they dispute the validity of the arbitration clauses within those agreements.[10]   This is a question of state contract law for the court to decide, and the presumption in favor of arbitration does not apply.  Huckaba, 892 F.3d at 688-89.  The court may only decide the validity of the arbitration agreement as severed from the remainder of the contract.  See Rent-a-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010) (holding that only challenges to the validity of the agreement to arbitrate are "relevant to a court's determination whether the arbitration agreement at issue is enforceable"); Green Tree Servicing, L.L.C. v. House, 890 F.3d 493, 504 (5th Cir. 2018) (holding that an agreement to arbitrate is "severable as a matter of federal arbitration law").  When another provision in the contract affects the arbitration agreement, the court may consider the validity of that provision as it applies to the arbitration agreement.  See Rent-a-Center, 130 S. Ct. at 2780.  Plaintiffs bear the burden of

---

[8]Plaintiffs' Response, Docket Entry No. 42, p. 1 ¶ 1.

[9]Id.

[10]See Plaintiffs' Response, Docket Entry No. 42, pp. 1-2.

proving that the Agreement is not valid.  See Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 297 (5th Cir. 2004) ("[A] party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.").

Plaintiffs argue that the arbitration clauses' cost-splitting provisions combined with the clauses' selected arbitration providers impose such a high cost on Plaintiffs that the clauses are substantively unconscionable.[11]  Unconscionable contracts are unenforceable under Texas law.  In re Poly-America, L.P., 262 S.W.3d at 348.  "[A]n arbitration agreement may render a contract unconscionable if 'the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or her] federal statutory rights in the arbitral forum.'"  In re Olshan Foundation Repair Co., LLC, 328 S.W.3d 883, 892 (Tex. 2010) (quoting Green Tree Financial Corp.-Alabama v. Randolph, 121 S. Ct. 513, 522 (2000)).  "[T]he crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights."  Id. at 894.  In In re Olshan the Texas Supreme Court set out factors for this analysis under Texas contract law: (1) the total costs of litigation compared to the total cost of arbitration; (2) whether that disparity is so great as to deter the bringing of claims (3) the actual cost of arbitration compared to the total amount of damages the claimant is seeking; and (4) the

---

[11] Id.

claimant's overall ability to pay the arbitration fees and costs. Id. at 894-95.  Of these factors, "comparison of the total costs of the two forums is the most important[.]"  Id. at 894.

Texas courts require "'some evidence that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum.'"  In re Olshan, 328 S.W.3d at 893 (quoting Poly-America, 262 S.W.3d at 356).  The complaining party "must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence."  In re Olshan, 328 S.W.3d at 895.

The agreements that Plaintiffs signed provide that "Global Fixtures Services, Inc. and Contractor will each pay one-half (½) of the arbitrator's fee and related arbitration expenses."[12]  The agreements designate Benchmark Arbitration Services, Inc. ("Benchmark") as the first choice for arbitrating covered disputes.[13]  Judicial Workplace Arbitrations, Inc. ("Judicial

---

[12]Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 14 ¶ 25; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 22 ¶ 25; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 30 ¶ 25; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 38 ¶ 25.

[13]Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 13 ¶ 23; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 21 ¶ 23; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 29 ¶ 23; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 37 ¶ 23.

Workplace") is the contracts' second choice for arbitrating covered disputes in case Benchmark is unable to arbitrate.[14]   The American Arbitration Association ("AAA") is the contracts' third choice for arbitrating covered disputes in case Judicial Workplace is unable to arbitrate.[15]   Plaintiffs' Response states that "[t]o the extent that the arbitration clauses are applicable to their tenures, Plaintiffs do not oppose abatement or stay of this lawsuit and an order to arbitrate" with AAA.[16]   In its reply, Defendants stated that "Defendants are agreeable to using Judicial Workplace Arbitration as the arbitrator in this matter."[17]

In order to determine whether it would be unconscionable for the contracts to require arbitration with Benchmark or Judicial Workplace, the court will consider their fees and the cost of litigation using the <u>Olshan</u> factors.

Benchmark's charges start with a non-refundable administrative fee of $4,000 regardless of the amount in controversy or the number of parties, and this does not include the arbitrator's fee.[18] Judicial Workplace's website states that "[a] case will be opened upon receipt of a $1,500.00 non-refundable Administrative Fee and

---

[14]<u>Id.</u>

[15]<u>Id.</u>

[16]Plaintiffs' Response, Docket Entry No. 42, p. 12 ¶ 30.

[17]Defendants' Reply, Docket Entry No. 45, p. 8 ¶ 18.

[18]See Benchmark Arbitration - File a Case, Exhibit 5 to Plaintiffs' Response, Docket Entry No. 42-5, p. 1.

$3,500.00 refundable Evergreen Retainer."[19]   Under the heading "Anticipated Fees," the website states that a one-day arbitration is estimated to cost $11,250.00, a two-day arbitration is estimated to cost $18,000.00, and a three-day arbitration is estimated to cost $22,500.00.[20]   The website also states that "[e]ach additional day of trial will incur an additional $4,500.00 in Anticipated Fees" and that an arbitrator's anticipated fees amount to $450.00 per hour.[21]   Plaintiffs' attorney has provided a sworn declaration stating that his clients are responsible for any arbitration costs under their fee agreement.[22]

Plaintiffs' attorney's sworn declaration states that he represents his clients on a contingent-fee basis and that, after the $402.00 filing fee was paid, no other payments are due to the forum court.[23]   He also states that "any amount of cost of arbitration that exceeds $402.00 is an expense that my Clients would not have to pay if his claim remained in district court."[24]

---

[19]Judicial Workplace Fees, Arbitration Policy/Fee Schedule-Administrative & Refundable Fees, Exhibit 6 to Plaintiffs' Response, Docket Entry No. 42-6, p. 1.

[20]Id., Anticipated Fees.

[21]Id.

[22]Declaration of Josef F. Buenker ("Buenker Declaration"), Exhibit 7 to Plaintiffs' Response, Docket Entry No. 42-7, p. 1 ¶ 2.

[23]Id. ¶¶ 2-3.

[24]Id. ¶ 3.

-10-

Defendants respond that "it is improbable that a jury trial conducted in federal court would not substantially exceed the total cost of arbitration."[25] Defendants estimate the deposition and other litigation expenses that Plaintiffs are likely to accrue if the case stays in court.[26] Defendants cite a settlement in which Plaintiffs' attorney represented other plaintiffs alleging similar claims against Global.[27] In addition to attorney's fees, the settlement in that case reimbursed Plaintiffs' attorney for $3,332.62 in costs and litigation expenses. Defendants state that Plaintiffs' expected deposition expenses "will certainly exceed $4,500."[28] Considering the recovered expenses in the earlier action and the estimated deposition expenses, Defendants estimate that Plaintiffs are likely to accrue expenses of at least $7,832.62.[29] Defendants assert that this is comparable to the estimated cost of a one-day arbitration with Judicial Workplace, $11,250.00.[30]

Plaintiffs' total cost of pursuing their claims in this action would be limited to the $402.00 court filing fee already paid.

---

[25]Defendants' Reply, Docket Entry No. 45, p. 7 ¶ 17.

[26]Id. at 8 ¶ 18.

[27]Id. (citing Settlement Agreement and Release, Monique Tillis v. Global Fixture Services, Inc. and Dolgencorp of Texas, Inc., Civil Action No. 4:19-1059, Docket Entry No. 134-1.

[28]Defendants' Reply, Docket Entry No. 45, p. 8 ¶ 18.

[29]Id.

[30]Id.

Benchmark's administrative fee alone is ten times that filing fee.[31] Judicial Workplace's published estimates state that a one-day arbitration would likely cost about $11,250.00.[32]   Under the contracts' 50/50 fee splitting provision, Plaintiffs would be responsible for $5,625.00 of that amount.  Plaintiffs' attorney stated in his Declaration, and Defendants have not disputed, that his "[C]lients are responsible for payment of any arbitration-related costs and fees."[33] Therefore, comparison of the total costs of litigation and arbitration (Olshan's "most important factor") weighs in favor of finding the arbitration cost provisions unconscionable.

Olshan also weighs the "[c]laimant's overall ability to pay the arbitration fees and costs."  In re Olshan, 328 S.W.3d at 895. Plaintiffs have provided sworn statements that none of them have the ability to pay half of these arbitration costs.   Thompson declares that he is unemployed and has no income or savings.[34]  The other Plaintiffs have provided sworn declarations with information

_____

[31]See Benchmark Arbitration - File a Case, Exhibit 5 to Plaintiffs' Response, Docket Entry No. 42-5, p. 1.

[32]Judicial Workplace Fees, Administrative & Refundable Fees, Exhibit 6 to Plaintiffs' Response, Docket Entry No. 42-6, p. 1.

[33]Buenker   Declaration, Exhibit 7 to Plaintiffs' Response, Docket Entry No. 42-7, p. 1 ¶ 2.

[34]Declaration of Michel Thompson ("Thompson Declaration"), Exhibit 1 to Plaintiffs' Response, Docket Entry No. 42-1, p. 1 ¶¶ 4-6.

about their income and expenses,[35] and the court is persuaded that Plaintiffs lack the ability to pay the arbitration fees and costs. The court must consider "whether that cost differential is so substantial as to deter the bringing of claims." In re Olshan, 328 S.W.3d at 893. Given the Plaintiffs' financial resources as stated in their declarations, the court is persuaded that the roughly $5,000 in additional, up-front arbitration expenses would likely deter them from pursuing their claims.

Finally, Olshan weighs "the actual cost of arbitration compared to the total amount of damages the claimant is seeking." In re Olshan, 328 S.W.2d at 895. The court is unable to weigh this factor because Plaintiffs failed to provide information quantifying the claimed overtime.

Plaintiffs' cost of arbitrating with Benchmark or Judicial Workplace is much larger than their cost of litigating, the Plaintiffs lack the overall ability to pay those arbitration costs, and the cost differential is large enough that it would likely deter bringing the claims. The court is persuaded that splitting the expense of a Benchmark or Judicial Workplace arbitration would prevent Plaintiffs from vindicating their rights in the arbitral

---

[35]Declaration of Brandon Caston ("Caston Declaration"), Exhibit 2 to Plaintiffs' Response, Docket Entry No. 42-2, pp. 1-2 ¶¶ 5-9; Declaration of D'Erricka Green ("Green Declaration"), Exhibit 3 to Plaintiffs' Response, Docket Entry No. 42-3, pp. 1-2 ¶¶ 5-9; Declaration of Tyree Rhodes ("Rhodes Declaration"), Exhibit 4 to Plaintiffs' Response, Docket Entry No. 42-4, pp. 1-2 ¶¶ 5-9.

forum, and that litigation is a far more adequate and accessible forum for the vindication of Plaintiffs' statutory rights. See In re Olshan, 328 S.W.3d at 894. The court therefore concludes that the provisions requiring arbitration with Benchmark or Judicial Workplace are unconscionable.

But this conclusion does not end the court's inquiry. While a court may hold that an arbitration agreement is entirely unenforceable because it contains an unconscionable provision, courts have also compelled arbitration after severing the unconscionable provision from the agreement. See, e.g., Holsapple v. Doggett Equipment Services, Ltd, No. EP-20-CV-00296-DCG, 2021 WL 2210896, at *4 (W.D. Tex. June 1, 2021) (severing a cost-splitting provision as substantively unconscionable because of plaintiff's financial inability, but compelling arbitration and requiring defendant to pay all arbitration costs except the filing fee); Dreibrodt v. McClinton Energy Group, LLC, No. MO:16-CV-00340-RAJ, 2017 WL 7805761, at *4-5 (W.D. Tex. Jan. 3, 2017) (same, except defendant had to pay the filing fee); James v. Conceptus, Inc., 851 F. Supp. 2d 1020, 1039-40 (S.D. Tex. 2012) (same); see also Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 300, 302 (5th Cir. 2004) (finding that employer-defendant's representation to lower court that it would pay "all the arbitration costs (excluding the $125 filing fee)" mooted employee-plaintiffs' argument that an arbitration agreement's fee-splitting provision rendered the agreement unenforceable and affirming the district court's order compelling arbitration).

-14-

Under Texas law "'[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.'" Venture Cotton Co-op. v. Freeman, 435 S.W.3d 222, 230 (Tex. 2014) (quoting Poly-America, 262 S.W.3d at 360). "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'" Id.

The contractor agreements signed by Plaintiffs provide that should Benchmark and Judicial Workplace be "unwilling or unable to administer the arbitration, then American Arbitration Association shall administer the arbitration generally under its then existing rules."[36] Global drafted these agreements. Global designated AAA as an alternative arbitration provider. The inclusion of two backup arbitrators indicates that Global contemplated the possibility that arbitration might not occur before the preferred arbitrator. Global's decision to specify backup arbitrators suggests that arbitration with Benchmark or Judicial Workplace was its preference but not a core assumption of the contract. Since Plaintiffs prefer to arbitrate with AAA, it is unlikely that the

---

[36]Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 13 ¶ 23; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 21 ¶ 23; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 29 ¶ 23; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 37 ¶ 23.

provisions requiring arbitration with Benchmark or Judicial Workplace were important to them. Moreover, arbitration under AAA's fee schedule for employment disputes appears to be reasonable.[37] For these reasons, the court concludes that the parties "'would have entered into the agreement [to arbitrate before AAA] absent the unenforceable provisions.'" See Venture Cotton, 435 S.W.3d at 230 (quoting Poly-America, 262 S.W.3d at 360). The court will sever therefore the provisions of the agreements that require the parties to arbitrate with Benchmark or Judicial Workplace. The parties are to use AAA to "administer the arbitration generally under its then existing rules."[38]

## B.  Time Coverage of the Arbitration Clauses

Plaintiffs argue that the arbitration clauses do not apply to their entire tenures with Global.[39] This is a question of whether "the dispute in question fall[s] within the scope of that arbitration agreement." Klein, 710 F.3d at 236. Although "'ordinary state-law [contract] principles'" govern this analysis, "'due regard must be given to the federal policy favoring

---

[37]American Arbitration Association Employment/Workplace Fee Schedule, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 42-8.

[38]Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 13 ¶ 23; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 21 ¶ 23; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 29 ¶ 23; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 37 ¶ 23.

[39]Plaintiffs' Response, Docket Entry No. 42, p. 4.

arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" <u>Polyflow,</u> 993 F.3d at 302-03 (quoting <u>Volt Information Sciences,</u> 109 S. Ct. at 1254). Of course, "the policy that favors resolving doubts in favor of arbitration 'cannot serve to stretch a contractual clause beyond the scope intended by the parties.'" <u>Hebbronville Lone Star Rentals, L.L.C. v. Sunbelt Rentals Industrial Services, L.L.C.,</u> 898 F.3d 629, 632-33 (5th Cir. 2018).

Plaintiffs assert that the contracts containing arbitration clauses only cover certain periods of their work for Global.[40] Defendants respond by supplying additional contracts covering more of the Plaintiffs' tenure.[41] Defendants also argue that the arbitration language is broad enough to apply to all relevant periods.[42]

## 1.   Durations of the Agreements

Thompson states that he worked for Global from February of 2019 until March of 2020 and from August of 2020 until January of 2021.[43] Defendants state that "[a]ll of Thompson's tenure from July of 2020 until January of 2021 is covered by a contractor

_____

[40]<u>Id.</u> at 4-5 ¶¶ 11-14.

[41]Defendants' Reply, Docket Entry No. 45, p. 2 ¶ 1.

[42]<u>Id.</u> at 1-2 ¶ 1.

[43]Thompson Declaration, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 42-1, p. 1 ¶ 3.

-17-

agreement."[44]   Defendants provide two contractor agreements with Thompson that together cover July of 2020 through December of 2021.[45]   However, Defendants do not address Thompson's work from February of 2019 through March of 2020 and supply no contractor agreement for that period.

Caston states that he worked for Global from July of 2020 until March of 2022.[46]   Defendants disagree, stating that Caston began in July of 2021, not 2020.[47]   Defendants have supplied two contractor agreements with Caston that together cover July of 2021 through December of 2022.[48]   If Defendants are correct about Caston starting in 2021, then his entire tenure falls within a contract. If not, then Caston's tenure from July of 2020 through June of 2021 is not covered by a contractor agreement.

Green states that she worked for Global from July of 2021 through April of 2022.[49]   Defendants have supplied two contractor

_____

[44]Defendants' Reply, Docket Entry No. 45, p. 3 ¶ 8.

[45]Michel Thompson's Contractor Agreement, Exhibit E to Defendants' Reply, Docket Entry No. 45, p. 14 ¶ 13; Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 11 ¶ 14.

[46]Caston Declaration, Exhibit 2 to Plaintiffs' Response, Docket Entry No. 42-2, p. 1 ¶ 3.

[47]Defendants' Reply, Docket Entry No. 45, p. 3 ¶ 9.

[48]Brandon Caston's Contractor Agreement, Exhibit F to Defendants' Reply, Docket Entry No. 45, p. 22 ¶ 14; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 19 ¶ 14.

[49]Green Declaration, Exhibit 3 to Plaintiffs' Response, Docket Entry No. 42-3, p. 1 ¶ 3.

agreements with Green that together cover June of 2021 through December of 2022.[50]   Therefore her entire tenure with Global is covered by a contractor agreement.

Rhodes states that he worked for Global from September of 2018 until November of 2021.[51]  Defendants disagree, stating that Rhodes worked from September of 2018 until November of 2019 and again from November of 2020 through November of 2021.[52]   Defendants have provided two contractor agreements with Rhodes that together cover December of 2020 through December of 2022.[53]  Regardless of which party is correct about the dates of Rhodes' tenure, Defendants have provided no contractor agreement for any period prior to December of 2020 and concede that Rhodes at least worked from September of 2018 through November of 2019.

In summary, Defendants have provided contractor agreements with terms covering portions of each Plaintiff's tenure, including July 2020 - January 2021 for Thompson; July 2021 - December 2022 for Caston; all of Green's tenure; and December 2020 - December

---

[50]D'Erricka Green's Contractor Agreement, Exhibit G to Defendants' Reply, Docket Entry No. 45, p. 30 ¶ 14; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 27 ¶ 14.

[51]Rhodes Declaration, Exhibit 4 to Plaintiffs' Response, Docket Entry No. 42-4, p. 1 ¶ 3.

[52]Defendants' Reply, Docket Entry No. 45, p. 4 ¶ 11.

[53]Tyree Rhodes' Contractor Agreement, Exhibit H to Defendants' Reply, Docket Entry No. 45, p. 38 ¶ 14; Tyree Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 35 ¶ 14.

2022 for Rhodes.   Defendants have not provided any contractor agreements with terms covering other portions of Plaintiffs' tenure, namely February 2019 - March 2020 for Thompson; Caston's tenure prior to July 2021, if any; and September 2018 - November 2019 or November 2020 for Rhodes, depending on the correct dates of his employment.

    2.   <u>Arbitration Clause Retroactivity</u>

The arbitration clauses each state that all claims "arising under the terms of this Agreement or in any way related to this Agreement shall be exclusively resolved through arbitration."[54]   The Agreements govern the work relationship between Plaintiffs and Global during the Agreements' effective periods, and FLSA claims relate to that work.

Whether FLSA claims for work performed before the agreements' terms are "related to" those agreements is a closer question.   The Fifth Circuit has distinguished between "narrow" arbitration clauses that only purport to govern claims "arising out of" a contract from "broad" arbitration clauses that include language along the lines of "'relate to' or 'are connected with' the contract."   <u>Pennzoil Exploration and Production Co. v. Ramco Energy</u>

---

[54]Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, p. 13 ¶ 23; Brandon Caston's Contractor Agreement, Exhibit B to Amended Motion to Compel, Docket Entry No. 36, p. 21 ¶ 23; D'Erricka Green's Contractor Agreement, Exhibit C to Amended Motion to Compel, Docket Entry No. 36, p. 29 ¶ 23; Tyree D. Rhodes' Contractor Agreement, Exhibit D to Amended Motion to Compel, Docket Entry No. 36, p. 37 ¶ 23.

Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).  A "broad" clause covers both claims arising under the contract and claims with "a significant relationship to the contract."  Jones v. Halliburton Co., 583 F.3d 228, 235 (5th Cir. 2009).  The Fifth Circuit has alternatively described this scope as reaching claims that "'touch' matters covered by" the arbitration agreement.  Id.  The Agreements between Global and Plaintiffs are "broad" clauses, because they use the language "arising under the terms of this Agreement or in any way related to this Agreement."[55]

The Agreements' terms all address work or requirements limited to the duration of the Agreement.  For example, the Unemployment Compensation term only addresses (non)availability of benefits "in connection with work performed under this Agreement;" the Insurance term addresses what coverage a contractor is required to maintain "during the entire term of this Agreement;" and the Indemnification term only addresses "liability arising from performing services under this Agreement."[56]  In fact, the Agreements provide that they terminate early upon "complet[ion of] the services required by this Agreement."[57]  The only term that appears to address matters outside the contract's duration is the transfer of rights in "any and all photographic images and videos . . . made . . . during the

---

[55] Id.

[56] E.g., Michel Thompson's Contractor Agreement, Exhibit A to Amended Motion to Compel, Docket Entry No. 36, pp. 10-11 ¶¶ 9, 11, 12.

[57] Id. at 11 ¶ 14.

Contractor's work for them" and entitling Global to use the contractor's name and likeness in advertising.[58] The "Payment" term expressly limits its effect to future services: "In consideration for the services to be performed [emphasis added] by Contractor, Client agrees to pay Contractor at the following rates."[59]

The Agreements say nothing about compensation for work outside their scope and almost nothing about other rights arising outside the Agreement's duration. Broad arbitration clauses reach claims with "a substantial relationship to the contract" or that "touch matters covered by the contract." Jones, 583 F.3d at 235. The clauses do not reach Plaintiffs' FLSA claims for work preceding the contracts because the claims only touch work and payment not covered by the contracts. To say otherwise would "stretch [the] contractual clause beyond the scope intended by the parties." Hebbronville Lone Star Rentals, 898 F.3d at 632-33.

Courts have reached mixed results with broad clauses, and the results have depended on the language used. The broadest clauses, using language addressing claims related to the employment relationship generally or language like "any cause whatsoever" have mostly been held to apply retroactively. In R.M. Perez & Associates, Inc. v. Welch the court held that the language "all my relations and dealings with [you] are subject to this agreement"

---

[58] Id. at 12 ¶ 20.B.

[59] Id. at 9 ¶ 2.

-22-

was intended to apply retroactively.  960 F.2d 534, 539 (5th Cir.
1992).  Other courts construing similar language have also applied
the clauses retroactively.[60]  However, some courts have refused to
apply this language retroactively.  In Moran v. Ceiling Fans
Direct, Inc. the court held that a clause covering claims "arising
out of or relating to" any aspect of the employment relationship
did not apply retroactively to already accrued FLSA overtime
claims.  2006 WL 2478837, *5 (S.D. Tex. Aug. 25, 2006).[61]

Courts have generally held that standard language providing
for arbitration of claims "arising under or relating to this
agreement" does not apply retroactively.  In Security Watch, Inc.
v. Sentinel Systems, Inc. the court decided that a clause covering
"all disputes . . . arising out of or relating to the Products
furnished pursuant to this Agreement or [Distributor's] acts or
omissions" could not apply to products supplied under earlier
agreements.  176 F.3d 369, 372 (6th Cir. 1999).  The court

---

[60]Vallejo v. Garda CL Southwest, Inc., 2013 WL 391163, *1-2
(S.D. Tex. Jan. 30, 2013) (applied retroactively: "any other claim
related to the employment relationship"); Douglas v. Timex Corp.,
1998 WL 34072739, *2 (S.D. Tex. Dec. 30, 1998) (applied
retroactively: "any legal or equitable claim . . . which relates
to . . . any other matter related to the relationship between the
Employee and the Company"); Boice v. A.G. Edwards & Sons, Inc.,
1988 WL 97966, *2 (E.D. La. Sep. 9, 1988) (applied retroactively:
"any controversy . . . arising out of this agreement . . . or any
other cause whatsoever").

[61]See also In re Brookshire Brothers, Ltd., 198 S.W.3d 381, 386
(Tex. App. - Texarkana 2006) (not applied retroactively:  "The
policy will cover all disputes arising out of your relationship
with [employer]").

-23-

emphasized that contract had a specified term of twelve months, that the arbitration clause did not purport to reach disputes related to earlier products, and that the contracts were "essentially forward-looking." Id. at 373. Other cases have also declined to read this type of clause retroactively.[62] One case applied this type of arbitration clause to conduct before the agreement's execution, but the plaintiff had signed the agreement just ten days into his employment, it was not a term contract, and the court found that it applied to the "period of time [that Plaintiff] was employed by Defendant." See Melendez v. Hoque & Mumith, Inc., 2012 WL 2595268, *3-4 (N.D. Tex. July 3, 2012).

Because the preexisting FLSA claims are not related to the subsequent Agreements, and because relevant prior cases have not applied this arbitration language retroactively, the court will not compel arbitration as to the FLSA claims that accrued prior to the terms of the Agreements. The additional contracts supplied by Defendants show that the end of each Plaintiff's tenure falls within the term of an Agreement. Therefore, the court need not address whether the arbitration clauses would reach claims arising after the Agreements' expiration.

_____

[62]Nordin v. Nutri/System, Inc., 897 F.2d 339, 341 (8th Cir. 1990) (not applied retroactively: "any controversy or claim arising out of or relating to this Agreement"); see also Shawn Bates & David Hricik, Arbitration Clauses for Ongoing Relationships, 42-Feb Hous. Law. 10, 11-12 (2005) (collecting cases and concluding that "arising under or related to" is generally not applied retroactively).

In summary, the provisions of the Agreements that require the parties to arbitrate with Benchmark or Judicial Workplace are severed as unconscionable. The claims based on work performed during the Agreements' durations are subject to arbitration, but the claims that accrued prior to any Agreements are not subject to arbitration.

## IV.   Conclusion and Order

For the reasons explained above, Defendant Global Fixture Services, Inc.'s and Dustin Hughes' First Amended Motion to Compel Arbitration and Stay or Administratively Close Pending Arbitration (Docket Entry No. 36) is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiffs' claims based on work performed during the duration of their Contractor Agreements are to be resolved through arbitration. The provisions requiring arbitration with Benchmark or Judicial Workplace are severed, and the arbitrable claims are to be resolved using AAA under its existing rules. The court will not stay the remaining claims unless the parties so request.

**SIGNED** at Houston, Texas, on this 25th day of August, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE